IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WESTINGHOUSE AIR BRAKE TECHNOLOGIES CORPORATION (d/b/a WABTEC CORPORATION), | ) ) ) ) | |
| Plaintiff, | ) ) | C.A. No. 17-1687 (LPS) (CJB) |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| SIEMENS INDUSTRY, INC., | ) ) ) | |
| Defendant. | ) | |

## SIEMENS' ANSWER, DEFENSES AND COUNTERCLAIMS

Defendant Siemens Industry, Inc. ("Siemens") hereby responds to the First Amended

Complaint for Patent Infringement ("Complaint") initially filed by Plaintiff Westinghouse Air

Brake Technologies Corporation (d/b/a Wabtec Corporation) ("Wabtec") in the United States

District Court for the Western District of Pennsylvania but since transferred to this Court. (*See*

D.I. 14, First Am. Compl.; D.I. 33, Mem. Op. Granting Siemens' Mot. To Transfer.)

### NATURE OF THE ACTION[1]

1.      Siemens admits that the Complaint purports to assert claims for infringement of

U.S. Patent No. 7,398,140 ("the '140 Patent"), U.S. Patent No. 8,175,764 ("the '764 Patent"),

and U.S. Patent No. 8,478,463 ("the '463 Patent") (collectively, "the Patents-in-Suit") pursuant

to the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, including 35 U.S.C. § 271, but

denies that Wabtec's allegations have any merit.  Siemens otherwise denies the allegations.

---

[1]      The section headings in this Answer are provided solely for ease of reference, tracking those used in the Complaint, and do not constitute any part of Siemens' response to the allegations in the Complaint or any form of admission as to the truth of those allegations.

## THE PARTIES, JURISDICTION AND VENUE

2.      Admitted.

3.      Admitted.

4.      The allegations in Paragraph 4 of the Complaint are directed to subject matter jurisdiction in the Western District of Pennsylvania, not in the District of Delaware, and therefore Siemens denies the allegations as lacking relevance to the present action.  Siemens does not dispute this Court's subject matter jurisdiction over Wabtec's present infringement claims pursuant to 35 U.S.C. §§ 1331 and 1338(a), provided that standing and related requirements are met.  Siemens otherwise denies the allegations.

5.      The allegations in Paragraph 5 of the Complaint are directed to personal jurisdiction in the Western District of Pennsylvania, not in the District of Delaware, and therefore Siemens denies the allegations as lacking relevance to the present action.  Siemens does not dispute this Court's personal jurisdiction over Siemens for purposes of Wabtec's present infringement claims, at least because Siemens is incorporated in Delaware.

6.      The allegations in Paragraph 6 of the Complaint are directed to personal jurisdiction in the Western District of Pennsylvania, not in the District of Delaware, and therefore Siemens denies the allegations as lacking relevance to the present action.  Siemens does not dispute this Court's personal jurisdiction over Siemens for purposes of Wabtec's present infringement claims, at least because Siemens is incorporated in Delaware.

7.      The allegations in Paragraph 7 of the Complaint are directed to venue in the Western District of Pennsylvania, not in the District of Delaware, and therefore Siemens denies the allegations as lacking relevance to the present action.  Siemens does not dispute that the

District of Delaware is a proper venue under 28 U.S.C. § 1400(b) for purposes of Wabtec's present infringement claims, at least because Siemens is incorporated in Delaware.

8.      Siemens admits that Wabtec has accused Siemens' Trainguard PTC Systems ("Trainguard PTC") of infringing the Patents-in-Suit, and further admits that Trainguard PTC is at least partially developed, manufactured and tested at Siemens' facility in Munhall, Pennsylvania.  Siemens otherwise denies the allegations.

9.      Admitted.

10.     Siemens admits that the web page cited in Paragraph 10 of the Complaint states that Siemens' Rail Automation business planned "to add 129 new engineering and manufacturing jobs" at its Munhall, Pennsylvania facility.   Siemens otherwise denies the allegations.

Siemens' Delaware Patent Infringement Suit

11.     Admitted.

12.     Admitted.

13.     Admitted.

14.     Admitted.

15.     Siemens admits that on August 17, 2017, Magistrate Judge Burke of this District granted Siemens' motion to sever, but Siemens otherwise denies the allegations.

16.     Denied.

17.     Siemens admits that Paragraph 17 of the Complaint accurately quotes the cited order from *LG Electronics Inc. v. Toshiba Samsung Storage Technology Korea Corp.*, but Siemens otherwise denies the allegations.

18.     Siemens admits that Paragraph 18 of the Complaint accurately quotes the cited order from *Toshiba Samsung Storage Tech. Korea Corp. v. LG Elecs. Inc.*, but Siemens otherwise denies the allegations.

19.     Denied.

20.     Siemens admits that Wabtec re-filed in the Western District of Pennsylvania substantially the same claims that it had previously asserted as counterclaims in the District of Delaware, but Siemens otherwise denies the allegations.

THE PATENTS-IN-SUIT

21.     Siemens admits that Exhibit A to the Complaint appears to be a copy of the '140 Patent, that the '140 Patent is titled "Operator warning system and method for improving locomotive operator vigilance," and that it lists an issue date of July 8, 2008.  Siemens otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies them.

22.     Siemens admits that Exhibit B to the Complaint appears to be a copy of the '764 Patent, and that the '764 Patent lists an issue date of May 8, 2012, but Siemens denies that the '764 Patent is titled "System and method for identifying an upcoming feature in a track network."  Siemens otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies them.

23.     Siemens admits that Exhibit C to the Complaint appears to be a copy of the '463 Patent, that the '463 Patent is titled "Train control method and system," and that it lists an issue date of July 2, 2013.  Siemens otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies them.

## BACKGROUND OF THE DISPUTE

### The Rail Safety Improvement Act of 2008

24.     Siemens lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies them.

25.     Admitted.

26.     Admitted.

27.     Siemens lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies them.

28.     Admitted.

29.     Siemens lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies them.

30.     Siemens lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies them.

31.     Siemens lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies them.

32.     Siemens lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies them.

33.     Siemens lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies them.

34.     Siemens lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies them.

35.     Denied.

<u>Wabtec's I-ETMS Solution</u>

36.     Siemens lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies them.

37.     Siemens lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies them.

38.     Siemens lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies them.

39.     Siemens lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies them.

40.     Siemens admits that Paragraph 40 of the Complaint contains a partial quotation of the cited document, but Siemens otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies them.

41.     Siemens admits that Paragraph 41 of the Complaint contains a partial quotation of the cited document, but Siemens otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies them.

42.     Siemens admits that Paragraph 42 of the Complaint contains a partial quotation of the cited document, but Siemens otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies them.

43.     Siemens lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies them.

44.     Siemens lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies them.

45.     Siemens admits that Paragraph 45 of the Complaint contains a partial quotation of the cited document, but Siemens otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies them.

46.     Siemens admits that Paragraph 46 of the Complaint contains a partial quotation of the cited document, but Siemens otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies them.

47.     Siemens admits that Paragraph 47 of the Complaint contains a partial quotation of the cited document, but Siemens otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies them.

48.     Siemens admits that Paragraph 48 of the Complaint contains a partial quotation of the cited document, but Siemens otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies them.

49.     Siemens admits that Paragraph 49 of the Complaint contains a partial quotation of the cited document, but Siemens otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies them.

50.     Siemens admits that Paragraph 50 of the Complaint contains a partial quotation of the cited document, but Siemens otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies them.

51.     Siemens admits that Paragraph 51 of the Complaint contains a partial quotation of the cited document, but Siemens otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies them.

52.     Siemens admits that Paragraph 52 of the Complaint contains a partial quotation of the cited document, but Siemens otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies them.

53.     Siemens lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies them.

54.     Siemens lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies them.

55.     Siemens lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies them.

56.     Siemens lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies them.

57.     Denied.

58.     Denied.

<u>Siemens' [Allegedly] Infringing Products</u>

59.     Admitted.

60.     Admitted.

61.     Siemens admits that its Trainguard PTC OBU product directly competes with Wabtec's TMC, but Siemens otherwise denies the allegations.

62.     Admitted.

63.     Siemens admits that Trainguard PTC may be configured to work to, among other things, prevent train accidents caused by human errors such as overspeed conditions or overrunning red signals, but Siemens otherwise denies the allegations.

64.     Admitted.

65.     Siemens admits that the Trainguard PTC OBU is part of the locomotive segment of Siemens' products relating to PTC and that the Trainguard OBU may be configured to, among other things, "dynamically calculate[] the precise braking distance to the next signal or speed restriction with the aid of speed sensor and GPS location determination systems thereby preventing train-to-train collisions, over speed derailments, unauthorized entry into work zones, and train movement through a switch in an improper position," but Siemens otherwise denies the allegations.

66.     Siemens admits that the Trainguard PTC OBU may be configured to, among other things, "come[] with the Siemens speed sensor and a diverse GPS solution for vital location determination"; that "[t]he speed sensor" may be configured to, among other things, "safely distinguish broken cables from locomotive standstill"; that "[t]he GPS solution" may be configured to, among other things, "use[] diverse GPS signal sources to rule out systematic failures"; and that "[s]ophisticated, robust sensor fusion algorithms," may be configured to, among other things, "calculate a safe and precise train position under all operational situations," but Siemens otherwise denies the allegations.

67.     Admitted.

68.     Siemens admits that the Trainguard PTC OBU may be configured to, among other things, "feature[] an innovative braking algorithm specifically optimized for heavy freight trains and commuter rail operations" and that the OBU may be configured to, among other things, "dynamically calculate[] the precise braking distance to the next signal or speed restriction" based "on a comprehensive physical model of the train and its environment," but Siemens otherwise denies the allegations.

69.     Siemens admits that the OBU may be configured to, among other things, feature "powerful computer platforms for vital and non-vital applications"; that the "computer platforms" may be configured to, among other things, "provide sufficient reserves to run additional applications such as automatic train control"; and that one of the "[f]eatures/[b]enefits" with which the Trainguard PTC system may be configured is "[v]ital location determination with a combination of speed sensor and dual GPS receivers," but Siemens otherwise denies the allegations.

70.     Siemens admits that the Trainguard LMS may be configured to, among other things, "[r]un[] the Meteorcomm ITCM protocol stack," "[c]onnect[] the OBU to the locomotive data radio," and serve a communication function in Siemens' Trainguard PTC system, and that Siemens "is used to successfully integrating various communication systems (e.g. GSM-R or Wifi) and all kinds of trackside beacons" so "whatever WIU manufacturer or COMM provider [one] prefer[s], Siemens Trainguard PTC will seamlessly integrate and make [] PTC installation operational," but Siemens otherwise denies the allegations.

71.     Siemens admits that the Trainguard PTC OBU is manufactured in the United States by Siemens.  Siemens otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations—including as to which other "various components" Wabtec is referring—and therefore denies them.

72.     Siemens admits that at least some components of its Trainguard PTC System are manufactured at its Munhall, Pennsylvania facility.  Siemens otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations—including as to which other "various components" Wabtec is referring—and therefore denies them.

73.     Admitted.

74.     Siemens admits that the Trainguard PTC OBU is used in the United States by Siemens and its customers.  Siemens otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations—including as to which other "various components" Wabtec is referring—and therefore denies them.

75.     Siemens admits that the Trainguard PTC OBU is offered for sale in the United States by Siemens.  Siemens otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations—including as to which other "various components" Wabtec is referring—and therefore denies them.

76.     Siemens admits that the Trainguard PTC OBU is sold in the United States by Siemens.  Siemens otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations—including as to which other "various components" Wabtec is referring—and therefore denies them.

77.     Admitted.

78.     Admitted.

79.     Siemens lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies them.

80.     Siemens admits that it is offering to sell its own BOS to CSX and other railroads that may also be Wabtec customers, but Siemens otherwise denies the allegations.

<u>Siemens' Knowledge of Wabtec's PTC-Related Patent Portfolio</u>

81.     Admitted.

82.     Admitted.

83.     Admitted.

84.     Denied.

COUNT I

INFRINGEMENT OF THE '140 PATENT

85.      Siemens incorporates by reference its responses to the allegations in Paragraphs 1-84 above.

86.      Siemens admits that the Abstract of the '140 Patent states that "[p]rovided is an operator warning system for use in connection with a locomotive having a horn system with a horn activation actuator and a horn device for producing a noise.  The operator warning system includes an onboard computer system with a database having grade crossing data and locomotive data thereon.  The onboard computer system is in communication with the horn system.  The operator warning system also includes a warning device for providing an audio, visual and/or tactile indicator to an operator of the locomotive based upon the grade crossing data, locomotive data and/or actuation condition of the horn activation actuator.  A method for improving locomotive operator vigilance is also provided."  Siemens otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies them.

87.      Denied.

88.      Denied.

89.      Denied.

90.      Denied.

91.      Admitted.

92.      Denied.

93.      Denied.

94.      Denied.

95.      Denied.

96.     Denied.

97.     Denied.

98.     Denied.

## COUNT II

### INFRINGEMENT OF THE '764 PATENT

99.     Siemens incorporates by reference its responses to the allegations in Paragraphs 1-98 above.

100.    Siemens admits that the Abstract of the '764 Patent states: "A system for identifying at least one condition of at least one upcoming feature of at least one track in a track network.  The system includes a positioning system for determining an estimated train position on a track within the track network, and at least one database including track data and feature data.  A computer (i) obtains the determined estimated train position on at least one track from the positioning system; and (ii) for the at least one track, identifies at least one condition for at least one upcoming feature based at least in part upon the track data and the feature data in the at least one database.  The feature data is dynamically updated while the train is traversing the track in the track network.  A method and apparatus for identifying a condition of an upcoming feature are also provided."   Siemens otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies them.

101.    Denied.

102.    Denied.

103.    Denied.

104.    Denied.

105.    Admitted.

106.    Denied.

107.   Denied.

108.   Denied.

109.   Denied.

110.   Denied.

111.   Denied.

112.   Denied.

COUNT III

INFRINGEMENT OF THE '463 PATENT

113.   Siemens incorporates by reference its responses to the allegations in Paragraphs 1-112 above.

114.   Siemens admits that the Abstract of the '463 Patent states: "A train control system for controlling trains traveling in a track network including tracks with signals associated therewith.  The system includes an on-board track database, a positioning system and an on-board control system.  The on-board control system receives position data and automatically brakes the train prior to encountering an upcoming signal based upon specified data points.  The train is not automatically braked if certain conditions are met.  A method for controlling a train traveling in a track network is also disclosed."  Siemens otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies them.

115.   Denied.

116.   Denied.

117.   Denied.

118.   Denied.

119.   Admitted.

120.    Denied.

121.    Denied.

122.    Denied.

123.    Denied.

124.    Denied.

125.    Denied.

126.    Denied.

## DEMAND FOR JURY TRIAL

Siemens admits that Wabtec has demanded a jury trial on all issues which can be heard by a jury.

## CONCLUSION AND PRAYER FOR RELIEF

Siemens denies that Wabtec is entitled to any relief whatsoever, specifically including the relief sought in its Prayer for Relief.

## SIEMENS' DEFENSES

Siemens asserts the following defenses in response to the allegations set forth in Counts I-III of the Complaint.  To the extent not asserted below, Siemens reserves all defenses under Rule 8(c) of the Federal Rules of Civil Procedure, the Patent Laws of the United States, and any other defense available at law or in equity that may now exist or may become available in the future, including to the extent such defenses come to light as a result of Siemens' ongoing investigation and discovery in this matter.  Moreover, Siemens undertakes the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are denominated herein.

### First Defense – Failure to State a Claim

The Complaint fails to state a claim upon which relief can be granted and/or fails to plead the allegations with sufficient particularity.

### Second Defense - Noninfringement

Siemens does not infringe and has not infringed, either directly or indirectly, any valid and enforceable claim of the Patents-in-Suit.

### Third Defense - Invalidity

Each and every claim of the Patents-in-Suit is invalid for failure to satisfy one or more of the conditions for patentability set forth in Title 35 of the United States Code, including but not limited to Sections 101, 102, 103, and/or 112.

### Fourth Defense – Lack of Notice

Under 35 U.S.C. § 287, Siemens is not liable for any alleged damages that occurred before Wabtec provided actual or constructive notice of infringement of the Patents-in-Suit to Siemens.

### Fifth Defense – Estoppel, Laches, Waiver, Acquiescence, and Unclean Hands

On information and belief, Wabtec's infringement claims are barred, in whole or in part, by the equitable doctrines of estoppel, laches, waiver, acquiescence, and/or unclean hands.

### Sixth Defense – Prosecution History Estoppel/Disclaimer

On information and belief, Wabtec's infringement claims are barred, in whole or in part, as a result of prosecution history estoppel, prosecution disclaimer, and/or due to statements or amendments made during prosecution of the Patents-in-Suit or related patents and applications, or during any other proceedings in the U.S. Patent and Trademark Office or in court.

## Seventh Defense – Good Faith

Siemens has engaged in all relevant activities in good faith, thereby precluding Wabtec, even if it were to prevail, from recovering its reasonable attorney fees and/or costs under 35 U.S.C. § 285.

## Eighth Defense – Limitation on Damages

By operation of 35 U.S.C. § 286, Wabtec is precluded from recovering damages for any infringement of the Patents-in-Suit occurring more than six years prior to the filing of the Complaint.

## SIEMENS' COUNTERCLAIMS

Siemens Industry, Inc. ("Siemens") asserts the following Counterclaims against Westinghouse Air Brake Technologies Corporation (d/b/a Wabtec Corporation) ("Wabtec").

## The Parties

1.      Siemens is a corporation organized under the laws of the State of Delaware, with a principal place of business at 3333 Old Milton Parkway in Alpharetta, Georgia.

2.      Wabtec is a corporation organized under the laws of the State of Delaware, with a principal place of business at 1001 Air Brake Avenue in Wilmerding, Pennsylvania.  Wabtec does business under the name "Wabtec Corporation."

## Nature of the Action

3.      Wabtec brought this action against Siemens pursuant to the Patent Laws of the United States, 35 U.S.C. §§ 1 *et seq.*, asserting claims for infringement of U.S. Patent No. 7,398,140 ("the '140 Patent"), U.S. Patent No. 8,175,764 ("the '764 Patent"), and U.S. Patent No. 8,478,463 ("the '463 Patent") (collectively, "the Patents-in-Suit").

**Jurisdiction and Venue**

4.      This Court has subject matter jurisdiction over these Counterclaims pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

5.      This Court may properly exercise personal jurisdiction over Wabtec at least because Wabtec is deemed to reside in this judicial district by virtue of being incorporated in the State of Delaware, and because Wabtec has asserted the Patents-in-Suit against Siemens in this jurisdiction.

6.      Venue is proper in this judicial district under 28 U.S.C. §§ 1391 and/or 1400 at least because Wabtec is deemed to reside here by virtue of being incorporated in the State of Delaware, and because Wabtec has asserted the Patents-in-Suit against Siemens in this jurisdiction.

**Count I – Declaratory Judgment of Non-Infringement of U.S. Patent No. 7,398,140**

7.      Siemens incorporates by reference the allegations in Paragraphs 1-6 of these Counterclaims as though fully set forth herein.

8.      In its Complaint, Wabtec alleges that Siemens has infringed and continues to infringe the '140 Patent, both directly and indirectly, and that Siemens will continue to engage in such acts of alleged infringement.

9.      Siemens has not and does not infringe the '140 Patent, either directly or indirectly.

10.     As evidenced by the allegations in the Complaint, there is now an actual, substantial, and continuing justiciable controversy between Wabtec and Siemens with respect to the alleged infringement of the '140 Patent.

11.     A judicial declaration that Siemens does not infringe, directly or indirectly, any valid and enforceable claim of the '140 Patent is therefore necessary and appropriate to resolve this controversy.

12.     Wabtec knew or should have known that Siemens has not and is not infringing the '140 Patent.  This is therefore an exceptional case entitling Siemens to an award of its attorney fees pursuant to 35 U.S.C. § 285.

## Count II – Declaratory Judgment of Invalidity of U.S. Patent No. 7,398,140

13.     Siemens incorporates by reference the allegations in Paragraphs 1-12 of these Counterclaims as though fully set forth herein.

14.     Siemens maintains that each and every claim of the '140 Patent is invalid for failure to satisfy one or more of the conditions for patentability set forth in Title 35 of the United States Code, including but not limited to Sections 101, 102, 103, and/or 112.

15.     As evidenced by the allegations in the Complaint, there is now an actual, substantial, and continuing justiciable controversy between Wabtec and Siemens with respect to the invalidity of the '140 Patent.

16.     By way of example, and not by way of limitation, the claims of the '140 Patent are invalid under 35 U.S.C. § 103 as obvious in light of at least Siemens' U.S. Patent No. 6,609,049 ("the '049 Patent") (Ex. A) in view of the Report of the Railroad Safety Advisory Committee to the Federal Railroad Administrator (Sep. 8, 1999) ("RSAC Report") (Ex. B).

17.     The '140 Patent is generally directed to "an operator warning system for use in connection with a locomotive having a horn system with a horn activation actuator and a horn device for producing a noise."  ('140 Patent at Abstract.)

18.     Each and every limitation of independent claim 1, for example, of the '140 Patent was either known in the art or would have been obvious to one of ordinary skill in the art prior to the purported invention of the claimed subject matter.

19.     The '049 Patent teaches "an onboard computer system including a database containing grade crossing data and locomotive data."

20.     For example, the '049 Patent discloses a "train control system 100" that "includes a control unit 110, which typically, but not necessarily, includes a microprocessor." (Ex. A, '049 Patent at col. 2, ll. 22-28.)  A "database 130, which contains the locations of all grade crossings in the system (or in the area in which the train is to operate) is also connected to the control unit 110." (*Id.* at col. 2, ll. 35-37.)  A GPS receiver provides locomotive data such as "position and speed information to the control unit 110." (*Id.* at col. 2, ll. 32-34.)  To the extent not expressly disclosed in the '049 Patent, a person of ordinary skill in the art would have found it obvious that such locomotive data could be stored in the database.

21.     The '049 Patent further teaches that the onboard computer system is in communication with a horn system.

22.     For example, the '049 Patent discloses that the "control unit 110 is also connected to an electrically activated horn 140." (*Id.* at col. 2, ll. 46-47.)

23.     The '049 Patent also teaches activation of the horn "based upon at least one of grade crossing data, locomotive data and actuation condition of the horn activator."

24.     For example, the '049 Patent discloses that the "control unit 110 uses the position information from the GPS receiver 130 as an index into the database 130 to determine the nearest grade crossing being approached by the train." (*Id.* at col. 2, ll. 42-45.)  When the "train is within ¼ mile of the grade crossing…the control unit 110 next calculates the estimated time of

arrival of the train at the grade crossing, based on the position and speed of the train as reported by the GPS receiver 120…If the estimated time of arrival is less than 24 seconds…the warning device is activated." (*Id.* at col. 2, l. 65-col. 3, l. 6.)

25.    To the extent not expressly disclosed in the '049 Patent, a person of ordinary skill in the art would have found it obvious to have, prior to activating the horn, an "onboard warning device configured to provide at least one of an audio, visual and tactile indicator to an operator of the locomotive based upon at least one of grade crossing data, locomotive data and actuation condition of the horn activation actuator."

26.    For example, the RSAC Report discloses a TrainGuard system that "consists of an onboard computer (OBC), display, [and] GPS receiver," as well as other features. (Ex. B, RSAC Report at 28.) The OBC of the TrainGuard system is described as being "provided with a track database that includes track curvature, grade, interlockings, signals, crossings and civil speed restrictions." (*Id.*) The engineer "is required to acknowledge alerts announcing the proximity of a new train, impending overspeed conditions and alerts indicating the threat of nearby trains." (*Id.*) The TrainGuard OBC "initiates an automatic brake application if an alert is not acknowledged, the train is overspeed or the stopping distance to another train is about to be violated." (*Id.*)

27.    Based on at least the RSAC Report, a person of ordinary skill in the art would have known of onboard warning devices, and would have been motivated to combine such a warning device with the horn activation system of the '049 Patent, with a reasonable expectation of success in doing so.

28.    In view of the foregoing, each and every claim of the '140 Patent asserted by Wabtec is invalid as obvious under 35 U.S.C. § 103 for at least the reasons discussed above.

29.     Accordingly, a judicial declaration that the claims of the '140 Patent are invalid is necessary and appropriate.

**Count III – Declaratory Judgment of Non-Infringement of U.S. Patent No. 8,175,764**

30.     Siemens incorporates by reference the allegations in Paragraphs 1-6 of these Counterclaims as though fully set forth herein.

31.     In its Complaint, Wabtec alleges that Siemens has infringed and continues to infringe the '764 Patent, both directly and indirectly, and that Siemens will continue to engage in such acts of alleged infringement.

32.     Siemens has not and does not infringe the '764 Patent, either directly or indirectly.

33.     As evidenced by the allegations in the Complaint, there is now an actual, substantial, and continuing justiciable controversy between Wabtec and Siemens with respect to the alleged infringement of the '764 Patent.

34.     A judicial declaration that Siemens does not infringe, directly or indirectly, any valid and enforceable claim of the '764 Patent is therefore necessary and appropriate to resolve this controversy.

35.     Wabtec knew or should have known that Siemens has not and is not in any way infringing the '764 Patent.  This is therefore an exceptional case entitling Siemens to an award of its attorney fees pursuant to 35 U.S.C. § 285.

**Count IV – Declaratory Judgment of Invalidity of U.S. Patent No. 8,175,764**

36.     Siemens incorporates by reference the allegations in Paragraphs 1-6 and 30-35 of these Counterclaims as though fully set forth herein.

37.     Siemens maintains that each and every claim of the '764 Patent is invalid for failure to satisfy one or more of the conditions for patentability set forth in Title 35 of the United States Code, including but not limited to Sections 101, 102, 103, and/or 112.

38.     As evidenced by the allegations in the Complaint, there is now an actual, substantial, and continuing justiciable controversy between Wabtec and Siemens with respect to the invalidity of the '764 Patent.

39.     By way of example, and not by way of limitation, the claims of the '764 Patent are invalid under 35 U.S.C. § 103 as obvious in light of at least the Concept of Operations document describing the Alaska Corporation's Collision Avoidance System (Sep. 28, 2006) ("CAS ConOps") (Ex. C).

40.     The '764 Patent is generally directed to a "system for identifying at least one condition of at least one upcoming feature of at least one track in a track network," wherein the system "includes a positioning system for determining an estimated train position on a track within the track network, and at least one database including track data and feature data." ('764 Patent at Abstract.)

41.     Each and every limitation of independent claim 1, for example, was either known in the art or would have been obvious to one of ordinary skill in the art prior to the purported invention of the claimed subject matter.

42.     The CAS ConOps document teaches "a positioning system configured to determine an estimated train position on a track within the track network."

43.     For example, the CAS ConOps document discloses that the "primary method of location, speed and direction determination in the location determination segment (LDS) is Global Position System (GPS) reports.  GPS satellites are used to determine the location of

equipped locomotives…Additionally, the LDS will determine speed and direction of travel for reporting to CAD [Computer Aided Dispatch system]."  (Ex. C, CAS ConOps at 1-7:12-21; 5-41:31 – 5-42:21.)

44.     The CAS ConOps document also teaches "at least one database comprising track data and feature data."

45.     For example, the CAS ConOps document discloses a database containing information regarding "commonly used track and signal system components (track pieces, switches, turnouts, diamonds, DTC block limits, TWDs, tunnels, bridges, highway grade crossings, block signals, controls, indications, etc.)," and that "[e]ach component in the rail network track database" shall include information regarding its type, physical location, track piece length, latitude and longitude coordinates, speed limits, grade, control mnemonics, indication mnemonics, and indication color, among other information.  (*Id.* at 5-52:11-23; 6-37:11-19.)

46.     To the extent not expressly disclosed in the CAS ConOps document, a person of ordinary skill in the art would have found it obvious that the track data and feature data could "comprise at least one of the following: status data, condition data, fault data, activity data, equipment state data, secondary safety arrangement data, primary implemented safety action data, [and] secondary implemented safety action data."

47.     The CAS ConOps document further teaches a "computer configured to: (i) obtain the determined estimated train position on at least one track from the positioning system."

48.     For example, the CAS ConOps document discloses that the "on-board systems continuously check the locomotive location comparing it to the track it is authorized to occupy."

(*Id.* at 5-6:37-38.)   It further discloses that "[t]he OBC will integrate inputs from the GPS receiver and the wheel tachometer to determine the train position." (*Id.* at 5-13:1-2.)

49.     The CAS ConOps document additionally teaches a "computer configured to:…(ii) for the at least one track, identify at least one condition for at least one upcoming feature…"

50.     For example, the CAS ConOps document discloses that "[w]ayside devices are interrogated by approaching locomotives and provide status and health data to the locomotive via the data link." (*Id.* at 5-13:15-18; 5-13:36 – 5:14:4; 5-35:10-14; 5-35:24-30; 5-35:37-40.)

51.     To the extent not expressly disclosed in the CAS ConOps document, a person of ordinary skill in the art would have found it obvious to have the computer identify at least one condition for at least one upcoming feature "based at least in part upon the track data and the feature data in the at least one database."

52.     The CAS ConOps document further teaches that "the at least one database is located in the train."

53.     For example, the CAS ConOps document expressly discloses that the database is an "on-board track database." (*Id.* at 5-13:37-38.)

54.     To the extent not expressly disclosed in the CAS ConOps document, a person of ordinary skill in the art would have found it obvious to have the feature data in the at least one database located in the train be "dynamically updated while the train is traversing the track in the track network."

55.     In view of the foregoing, each and every claim of the '764 Patent asserted by Wabtec is invalid as obvious under 35 U.S.C. § 103 for at least the reasons discussed above.

56.     Accordingly, a judicial declaration that the claims of the '764 Patent are invalid is therefore necessary and appropriate.

## Count V – Declaratory Judgment of Non-Infringement of U.S. Patent No. 8,478,463

57.     Siemens incorporates by reference the allegations in Paragraphs 1-6 of these Counterclaims as though fully set forth herein.

58.     In its Complaint, Wabtec alleges that Siemens has infringed and continues to infringe the '463 Patent, both directly and indirectly, and that Siemens will continue to engage in such acts of alleged infringement.

59.     Siemens has not and does not infringe the '463 Patent, either directly or indirectly.

60.     As evidenced by the allegations in the Complaint, there is now an actual, substantial, and continuing justiciable controversy between Wabtec and Siemens with respect to the alleged infringement of the '463 Patent.

61.     A judicial declaration that Siemens does not infringe, directly or indirectly, any valid and enforceable claim of the '463 Patent is therefore necessary and appropriate to resolve this controversy.

62.     Wabtec knew or should have known that Siemens has not and is not in any way infringing the '463 Patent.  This is therefore an exceptional case entitling Siemens to an award of its attorney fees pursuant to 35 U.S.C. § 285.

## Count VI – Declaratory Judgment of Invalidity of U.S. Patent No. 8,478,463

63.     Siemens incorporates by reference the allegations in Paragraphs 1-6 and 57-62 of these Counterclaims as though fully set forth herein.

64.     Siemens maintains that each and every claim of the '463 Patent is invalid for failure to satisfy one or more of the conditions for patentability set forth in Title 35 of the United States Code, including but not limited to Sections 101, 102, 103, and/or 112.

65.     As evidenced by the allegations in the Complaint, there is now an actual, substantial, and continuing justiciable controversy between Wabtec and Siemens with respect to the invalidity of the '463 Patent.

66.     By way of example, and not by way of limitation, the claims of the '463 Patent are invalid under 35 U.S.C. § 103 as obvious in light of at least the CAS ConOps document.

67.     The '463 Patent is generally directed to "[a] train control system for controlling trains traveling in a track network including tracks with signals associated therewith," which includes "an on-board control system" that "receives position data and automatically brakes the train prior to encountering an upcoming signal based upon specified data point" unless "certain conditions are met." ('463 Patent at Abstract.)

68.     Each and every limitation of independent claim 1, for example, was either known in the art or would have been obvious to one of ordinary skill in the art prior to the purported invention of the claimed subject matter.

69.     The CAS ConOps document teaches "an onboard track database comprising at least one of the following: train data, track network data, track data, [and] signal data."

70.     For example, the CAS ConOps document discloses an "on-board track database" containing information regarding "commonly used track and signal system components (track pieces, switches, turnouts, diamonds, DTC block limits, TWDs, tunnels, bridges, highway grade crossings, block signals, controls, indications, etc.)," and that "[e]ach component in the rail network track database" shall include information regarding its type, physical location, track piece length, latitude and longitude coordinates, speed limits, grade, control mnemonics, indication mnemonics, and indication color, among other information.  (*Id.* at 5-52:11-23; 6-37:11-19.)

71.     The CAS ConOps document further teaches "a positioning system configured to determine position data directed to a position of the at least one train within the track network."

72.     For example, the CAS ConOps document discloses that the "primary method of location, speed and direction determination in the location determination segment (LDS) is Global Position System (GPS) reports.   GPS satellites are used to determine the location of equipped locomotives…Additionally, the LDS will determine speed and direction of travel for reporting to CAD [Computer Aided Dispatch system]."  (*Id.* at 1-7:12-21; 5-41:31 – 5-42:21.)

73.     The CAS ConOps document also teaches "an onboard control system configured to: (i) receive position data from the positioning system."

74.     For example, the CAS ConOps document discloses that the "on-board systems continuously check the locomotive location comparing it to the track it is authorized to occupy" (*id.* at 5-6:37-38), and that "[t]he OBC will integrate inputs from the GPS receiver and the wheel tachometer to determine the train position" (*id.* at 5-13:1-2).

75.     To the extent not expressly disclosed in the CAS ConOps document, a person of ordinary skill in the art would have found it obvious that the onboard control system could also be "configured to: (i) receive…signal data from the track database."

76.     The CAS ConOps document also teaches "based upon at least one of the following: train data, track network data, track data, position data, signal data, train control data, authorization data, signal aspect data, or any combination thereof, predictively enforcing the next, upcoming signal with a train control system by automatically braking the at least one train prior to encountering the next, upcoming signal, unless: (a) based at least partially on current signal aspect data, a determination is made that it is safe to proceed towards the next, upcoming signal; (b) specified authorization data is received; or (c) specified train control data is received."

77.     For example, the CAS ConOps document discloses that "[t]he On-board Computer has signal locations in its database" and that "[t]he On-board Computer will initiate communication with the signal and will receive an initial signal indication." (*Id.* at 6-37:5-6, 6-37:11.)  The "reaction of the On-board Computer to received indications depends on the indication…; however, the On-board Computer shall generate a speed profile to the target speed if speed limit is less than the current train speed." (*Id.* at 6-37:16-19.)  If "the engineer does not keep the train within the safe braking profile generated by the On-board Computer, and stop if the signal remains at Stop, the On-board Computer will enforce a braking profile to stop before the signal.  The On-board Computer will not allow the train to proceed beyond the signal until receiving a proceed indication, or the dispatcher authorizes movement past the signal at Stop.  If the signal clears while the train is braking, the On-board Computer reverts to permitting the authorized speed." (*Id.* at 6-37:21-28.)   To the extent not expressly disclosed in the CAS ConOps document, a person of ordinary skill in the art would have found it obvious to store current signal aspect data in the onboard database and to rely on that data in determining whether to predictively enforce the next, upcoming signal with a train control system.

78.     In view of the foregoing, each and every claim of the '463 Patent asserted by Wabtec is invalid as obvious under 35 U.S.C. § 103 for at least the reasons discussed above.

79.     Accordingly, a judicial declaration that the claims of the '463 Patent are invalid is therefore necessary and appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Siemens prays for judgment in its favor granting the following relief:

A.     Dismissing the Complaint with prejudice;

B.     Denying all relief requested by Wabtec;

- 29 -

C.     Granting all relief requested by Siemens;

D.     Declaring that Siemens has not infringed any of the Patents-in-Suit;

E.     Declaring that the Patents-in-Suit are invalid;

F.     Declaring that this is an exceptional case, and awarding Siemens its reasonable attorney fees, costs, and expenses pursuant to 35 U.S.C. § 285; and

G.     Such other and further relief as this Court deems just and proper under the circumstances.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b) and District of Delaware Local Rule 38.1, Siemens hereby demands a trial by jury on the Counterclaims on all issues so triable.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Karen Jacobs*

OF COUNSEL:

Mark Supko
Kathryn L. Clune
Vincent J. Galluzzo
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC 20004
(202) 624-2500

Jacob Z. Zambrzycki
CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, NY 10022
(212) 223-4000

December 15, 2017

_____
Jack B. Blumenfeld (#1014)
Karen Jacobs (#2881)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@mnat.com
kjacobs@mnat.com

*Attorneys for Siemens Industry, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on December 15, 2017, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on December 15, 2017, upon the following in the manner indicated:

Steven L. Caponi, Esquire                                    *VIA ELECTRONIC MAIL*
K & L GATES LLP
600 North King Street, Suite 901
Wilmington, DE  19801
*Attorneys for Defendants*

Alan L. Barry, Esquire                                       *VIA ELECTRONIC MAIL*
Jason A. Engel, Esquire
Benjamin E. Weed, Esquire
Devon C. Beane, Esquire
Katherine L. Hoffee, Esquire
K & L GATES LLP
70 West Madison Street, Suite 3100
Chicago, IL  60602
*Attorneys for Defendants*

*/s/ Karen Jacobs*
_____
Karen Jacobs (#2881)