IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WESTINGHOUSE AIR BRAKE TECHNOLOGIES CORPORATION (d/b/a WABTEC CORPORATION),<br><br>           Plaintiff,<br><br>     v.<br><br>SIEMENS MOBILITY, INC.,<br><br>           Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) C.A. No. 17-1687 (LPS) (CJB)<br>)<br>)<br>)<br>)<br>) |

### SIEMENS' ANSWERING BRIEF IN OPPOSITION TO WABTEC'S MOTION TO SEVER PURSUANT TO FED. R. CIV. P. 21

OF COUNSEL:

Mark M. Supko
Kathryn L. Clune
Kent A. Gardiner
Vincent J. Galluzzo
Joshua M. Rychlinski
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC  20004
(202) 624-2500

Scott L. Bittman
Jacob Z. Zambrzycki
CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, NY  10022
(212) 223-4000

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Karen Jacobs (#2881)
Stephen J. Kraftschik (#5623)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
kjacobs@mnat.com
skraftschik@mnat.com

*Attorneys for Defendant Siemens Mobility, Inc.*

John S. Gibson
Chahira Solh
CROWELL & MORING LLP
3 Park Plaza, 20th Floor
Irvine, CA  92614
(949) 263-8400

Sima Namiri-Kalantari
CROWELL & MORING LLP
515 South Flower Street, 40th Floor
Los Angeles, CA  90071
(213) 622-4750

November 1, 2018

-i-

## **TABLE OF CONTENTS**

Page

NATURE AND STAGE OF THE PROCEEDINGS ...................................................................1

SUMMARY OF ARGUMENT .......................................................................................................1

STATEMENT OF FACTS ..............................................................................................................3

ARGUMENT...................................................................................................................................3

      I.  SEVERANCE WOULD UNFAIRLY PREJUDICE SIEMENS. ..................................4

      II.  DENYING WABTEC'S MOTION TO SEVER WOULD PROMOTE EXPEDITION AND JUDICIAL ECONOMY. ............................................................6

      III.  DENYING SEVERANCE WOULD LEAD TO MORE EFFICIENT DISCOVERY. .................................................................................................................8

      IV.  ANY POTENTIAL JUROR CONFUSION COULD BE ADDRESSED THROUGH OTHER MEANS................................................................................10

CONCLUSION...............................................................................................................................11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Advanced Cardiovascular Sys. v. Medtronic Vascular, Inc.*,
   579 F. Supp. 2d 554 (D. Del. 2008) ................................................................................7

*Applied Biosystems, Inc. v. Cruachem, Inc.*,
   No. CIV.A. 89-579-JRR, 1990 WL 495458 (D. Del. Aug. 3, 1990) ......................................10

*ClassCo, Inc. v. Apple, Inc.*,
   838 F.3d 1214 (Fed. Cir. 2016) ........................................................................................7

*Eurand Inc. v. Mylan Pharm. Inc.*,
   No. Civ. 08-889-SLR, 2009 WL 3172197 (D. Del. Oct. 1, 2009) ...........................................10

*Graudins v. Retro Fitness, LLC*,
   921 F. Supp. 2d 456 (E.D. Pa. 2013) ...............................................................................1, 3

*Grigsby v. Kane*,
   250 F. Supp. 2d 453 (M.D. Pa. 2003) ...............................................................................3

*Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*,
   Civil No. 1:CV-09-1685, 2011 WL 1627052 (M.D. Pa. Apr. 29, 2011) ..................................3

*Lucent Techs., Inc. v. Gateway, Inc.*,
   580 F.3d 1301 (Fed. Cir. 2009) ........................................................................................7

*Senju Pharm. Co. v. Apotex Inc.*,
   891 F. Supp. 2d 656 (D. Del. 2012) ..................................................................................9

*Synopsys, Inc. v. Magma Design Automation*,
   No. CIVA 05-701 (GMS), 2006 WL 1452803 (D. Del. May 25, 2006) ................................10

*W.L. Gore & Assocs. v. Carlisle Corp.*,
   529 F.2d 614 (3d Cir. 1976) .............................................................................................8

*Walsh v. Miehle-Goss-Dexter, Inc.*,
   378 F.2d 409 (3d Cir. 1967) .............................................................................................3

**Other Authorities**

Fed. R. Civ. P. 21 .........................................................................................................1, 3, 10

Fed. R. Civ. P. 42 .........................................................................................................1, 3, 10

## NATURE AND STAGE OF THE PROCEEDINGS

Siemens filed a Motion for Leave to Amend (D.I. 107) to add antitrust counterclaims on July 19, 2018.  The Court granted Siemens' Motion on October 3, 2018 and in so ruling further ordered that discovery on the counterclaims "will proceed." (D.I. 142.)  Wabtec has now filed a Motion to Sever Pursuant to Federal Rule Civil Procedure 21 (D.I. 146 (hereinafter "Mot.")) seeking to sever Siemens' antitrust counterclaims (the second motion Wabtec has filed directed to the counterclaims).[1]  This is Siemens' answering brief in opposition to Wabtec's Motion to Sever.

## SUMMARY OF ARGUMENT

In granting Siemens leave to amend in October 2018, the Court found that the addition of the antitrust counterclaims would not unfairly prejudice Wabtec.  It found instead that "their addition to this case, which still has ample time left for discovery, is more likely to promote the just, speedy, and relatively inexpensive resolution of the parties' dispute." (D.I. 142.)

Now, attempting to draw an unsupported parallel to the Court's earlier severance of Wabtec's delayed patent infringement claims from Siemens' patent infringement case against Wabtec, Wabtec seeks to delay resolution of Siemens' timely antitrust counterclaims by forcing Siemens to pursue those claims in a separate proceeding or case.[2]  But severance will *not* further the convenience of the parties.  It will not avoid prejudice to Siemens.  Nor will it promote a more expedient and economical resolution of this dispute.  *See Graudins v. Retro Fitness, LLC*, 921 F. Supp. 2d 456, 467-68 (E.D. Pa. 2013).  To the contrary, there is significant overlap between the facts underlying Siemens' antitrust counterclaims and those on which Siemens will rely in defending against Wabtec's claims—as became clear in the context of Wabtec's failed

---

[1] By filing a separate Motion to Sever rather than seeking this alternative relief in its Motion to Dismiss, Wabtec has in effect exceeded the Court's briefing limits.

[2] The relief Wabtec seeks is unclear.  Although Wabtec cites only Federal Rule of Civil Procedure 21 (severance), it relies on Federal Rule of Civil Procedure 42 cases (bifurcation) and seeks a "separate trial." (Mot. at 16.)  In the event that Wabtec actually seeks bifurcation, Wabtec should be required to file a motion pursuant to Federal Rule of Civil Procedure 42 so that Siemens can evaluate it and respond accordingly.

1

preliminary injunction motion. Siemens is ready, willing, and able to prepare its antitrust counterclaims for trial on the same schedule that the Court has established for Wabtec's original patent infringement claims. Severing Siemens' antitrust counterclaims would needlessly complicate the dispute between these parties with yet another separate piece of litigation.

Wabtec concealed its anticompetitive conduct for years, and its antitrust violations came to light only through discovery in this litigation. After learning of Wabtec's anticompetitive conduct, Siemens timely brought counterclaims in this case, because they are naturally related to and involve much of the same evidence as Wabtec's infringement claims. (For example, Siemens is asserting, *inter alia*, an unclean hands defense based in part on Wabtec's anticompetitive conduct.) Having the antitrust counterclaims be part of this case will thus expedite resolution of the full scope of the dispute. Ultimately, Siemens' goal is the just, efficient, and speedy adjudication of this matter, which has significant implications in public safety and meeting congressional deadlines. Severance, by contrast, would inevitably delay resolution of this matter, thus further delaying competition in markets where Wabtec uses its illegal monopoly power to thwart innovation. Such competition and innovation is sorely needed to expeditiously deliver competitive solutions that will achieve compliance with congressional mandates. Siemens has already served discovery related to its antitrust counterclaims on Wabtec in accordance with the Court's Order, and that discovery should proceed as the Court directed.[3] (D.I. 142.)

Wabtec has not shown that there would be *any* delay in adjudicating its patent infringement claims since Siemens stands ready to complete discovery and be ready for trial at the same time Wabtec's patent claims will be tried, and certainly does not show any undue delay were a modest extension of the deadlines needed (particularly given Wabtec's own delay in prosecuting its patent claims). Moreover, Wabtec ignores the unfair prejudice that Siemens

---

[3]   Indeed, Wabtec now seeks further delay by moving to stay all discovery on Siemens' antitrust claims pending resolution of Wabtec's motion to dismiss, notwithstanding the Court's recent order, (D.I. 142) expressly authorizing such discovery to proceed. (D.I. 156, 157.)

would suffer from delaying resolution of the antitrust counterclaims. Wabtec further gives little or no credit to the fact that there are other methods of reducing juror confusion should a combined trial later appear untenable, such as bifurcation under Federal Rule of Civil Procedure 42. *See Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*, Civil No. 1:CV-09-1685, 2011 WL 1627052, at *1 (M.D. Pa. Apr. 29, 2011) (discussing the differences between Rule 21 severance and Rule 42(b) bifurcation).

As explained further below, the Court should exercise its discretion to deny severance of Siemens' antitrust counterclaims because it would unfairly prejudice Siemens, and denying severance would lead to a more just, speedy, and efficient adjudication of the case. At a minimum, the Court should deny severance at this early stage of the case to allow discovery to proceed for the combined issues; the Court could then reassess closer to trial, and with additional information about the claims, whether severance or bifurcation of the antitrust claims would make sense.

## STATEMENT OF FACTS

The relevant facts are set forth in the Argument section below.

## ARGUMENT

The Court, under Federal Rule of Civil Procedure 21, has "virtually unfettered discretion in determining whether or not severance is appropriate." *Grigsby v. Kane*, 250 F. Supp. 2d 453, 456 (M.D. Pa. 2003); *see also Walsh v. Miehle-Goss-Dexter, Inc.*, 378 F.2d 409, 412 (3d Cir. 1967). A motion to sever should be decided based on evaluation of the following factors: (1) the convenience of the parties; (2) avoiding prejudice; and (3) expedience and economy. *Graudins*, 921 F. Supp. 2d at 467-68. In granting Siemens' motion for leave to amend to assert antitrust counterclaims, the Court found that "Wabtec has not shown that the proposed counterclaims are futile and would not survive a motion to dismiss" and that the counterclaims "would not unfairly prejudice Wabtec." (D.I. 142.) Instead, they would be "more likely to promote the just, speedy, and relatively inexpensive resolution of the parties' disputes than would the initiation of yet another case between these parties." (*Id.*)

Siemens respectfully requests that the Court exercise its discretion and deny severance here because, as further explained below: (1) severance would prejudice Siemens in a way that would outweigh any potential prejudice to Wabtec; (2) denying severance would promote expedition and judicial economy given the factual overlap between Wabtec's claims and Siemens' counterclaims; (3) discovery would be more efficient given this factual overlap; and (4) jurors will not be confused by the combined cases, and even if they might be, there are other, less prejudicial ways to avoid juror confusion. At a minimum, there is no basis to sever the antitrust claims for purposes of discovery. Nevertheless, to the extent the Court were inclined to sever Siemens' antitrust counterclaims at this time, Siemens requests that, to minimize prejudice and maximize expedition and judicial economy, the Court require the parties to extend their cross-use agreement to include the severed claims (i.e., in addition to the current case, Siemens' original patent infringement case also pending before this Court, and Wabtec's trade secrets case pending in Pennsylvania state court) as a condition of permitting severance.

## I. SEVERANCE WOULD UNFAIRLY PREJUDICE SIEMENS.

Severance would unfairly prejudice Siemens because of the delay it would cause in the resolution of Siemens' antitrust counterclaims. As Siemens alleges in its counterclaims, Congress has set deadlines that are rapidly approaching for railroads to install Positive Train Control ("PTC") systems on their trains. (D.I. 143 at 32 ¶ 84.) Siemens has also alleged that it is suffering ongoing harm from Wabtec's anticompetitive behavior. (*Id.* at 51-53 ¶¶ 148-55.) Any delay in the resolution of this matter would allow Wabtec to continue its monopolistic and anticompetitive misconduct during the very period when the railroads are in desperate need of competition in the Interoperable Train Control ("ITC")-PTC market. (D.I. 116 at 2-3 (concluding that "the public interest would be disserved" if the Court granted Wabtec's motion for preliminary injunction, and that the public interest would not be disserved by denying the motion, given the December 2018 federal statutory deadline for implementation of PTC, the

interests of public safety, and the railroads' demonstrated desire for mitigating the risk created by reliance on a sole supplier of PTC).)

The Court should deny the motion to sever because keeping Siemens' antitrust counterclaims on track in the current case would allow for the expeditious resolution of these issues. Siemens timely moved to amend its counterclaims within the deadline set by the Court to amend its pleadings, (*see* D.I. 142), and is ready and willing to follow the deadlines[4] set forth in the Court's current Scheduling Order. (*See* D.I. 56.) In fact, Siemens served its first set of discovery with respect to its antitrust counterclaims on October 12, 2018, (*see* D.I. 145), pursuant to the Court's order that discovery should proceed "unless and until" a motion to dismiss, motion to sever, or motion related to discovery is *granted*—not just filed—or until other relief is ordered. (D.I. 142.)

By contrast, if the Court were to grant Wabtec's motion to sever, significant delay will occur. Wabtec has already filed a motion to dismiss Siemens' antitrust counterclaims, which it filed on the same day it filed its motion to sever. (D.I. 146; D.I. 148.) Wabtec has also filed a motion for protective order and stay of discovery pending resolution of its motion to dismiss and motion to sever. (D.I. 157.) If the Court were to sever Siemens' antitrust counterclaims, the Court may need to repeat the entire motion to dismiss briefing stage, resulting in further delay of the case, further delay in discovery, and a waste of judicial resources.

Wabtec argues that it would be unfairly prejudiced without severance because its patent case would be delayed by the introduction of Siemens' antitrust counterclaims. As an initial matter, any purportedly unfair delay in prosecuting Wabtec's patent case applies equally, if not more so, to Siemens' counterclaims, which impact competition in this safety-critical marketplace. And while discovery will need to be taken with respect to Siemens' antitrust counterclaims, Wabtec fails to explain how proceeding with this discovery here on the current

---

[4]   The deadline for document production to be substantially complete was October 26, 2018. The parties are currently negotiating a short extension of this date, but Siemens' position is that all other dates should be kept as-is.

5

schedule would delay adjudication of Wabtec's patent claims and thus prejudice Wabtec. In fact, the Court has already held that it will instead likely "promote the just, speedy, and relatively inexpensive resolution of the parties' disputes" given the "ample time left for discovery." (D.I. 142.) Again, Siemens is ready and willing to continue under the deadlines set forth in the current Scheduling Order.

Wabtec is capable of adhering to the current deadlines; Wabtec added attorneys from another law firm, Jones Day, to the case shortly after Siemens filed its motion to amend, presumably to handle the antitrust aspects of the case. (D.I. 115.) As a result, the entire case can move forward at an efficient and speedy pace, while ensuring the just adjudication of the claims involved. But in any event, Wabtec falls short of showing any undue prejudice were some modest extensions of deadlines needed, particularly given its delay in prosecuting its patent claims, including by filing them in multiple jurisdictions.

In light of the severe harms that would befall Siemens and competition in the ITC-PTC market if Siemens' antitrust case were to be delayed—and the potential effects on the customers in this case were the congressional deadline to be missed again—and given the *de minimis* harm, if any, to Wabtec, the prejudice that Siemens would suffer from severance outweighs any prejudice Wabtec would experience should the Court deny the motion. In denying Wabtec's motion to sever, the Court could allow this case to continue on its current schedule without the unfair prejudice to Siemens that severance would cause.

## II. DENYING WABTEC'S MOTION TO SEVER WOULD PROMOTE EXPEDITION AND JUDICIAL ECONOMY.

As this Court has already stated, the addition of Siemens' antitrust counterclaims to this case—far from delaying adjudication of Wabtec's claims—is likely to expedite efficient resolution of "the parties' disputes." (D.I. 142.) Severance, on the other hand, would result in significant delay in the resolution of Siemens' claims. Siemens has already served Wabtec with discovery requests with respect to its antitrust counterclaims. (D.I. 145.) If the Court were to grant Wabtec's motion to sever, the Court would have to deal with the filing of a new case and

all the issues that arise from the initiation of a new case. Instead, the Court could simply deny the motion to sever, and allow the case to continue.

Wabtec's arguments that there is no factual overlap between the parties' claims and that they have no bearing on each other are simply wrong. For example, Wabtec can be expected to submit evidence of alleged commercial success in response to Siemens' defense that the patents-in-suit are invalid for obviousness, but Siemens will counter that Wabtec's sales of patented products were the result of Wabtec's ill-gotten market power, not the merits of the patented "inventions." *See, e.g.*, *ClassCo, Inc. v. Apple, Inc.*, 838 F.3d 1214, 1220 (Fed. Cir. 2016) (requiring nexus between alleged secondary considerations of nonobviousness and merits of invention). Similarly, with regard to damages, whether Wabtec claims entitlement to lost profits or a reasonable royalty, the influence of its illegally acquired market dominance on the prices Wabtec has been able to charge will be a key element of Siemens' rebuttal. *See, e.g.*, *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325, 1335 (Fed. Cir. 2009) (applying *Georgia-Pacific* reasonable royalty factors, including commercial relationship between the parties and portion of profit that should be credited to the invention rather than other considerations). Still further, Wabtec seeks to permanently enjoin Siemens from selling its accused TrainGuard PTC system—the very system whose components are at the heart of Siemens' antitrust counterclaims. (D.I. 1 at 25-26; D.I. 143 at 34 ¶ 90-91.) To prevail, Wabtec would need to prove irreparable harm, balance of the hardships, and public interest factors. *Advanced Cardiovascular Sys. v. Medtronic Vascular, Inc.*, 579 F. Supp. 2d 554, 557-58 (D. Del. 2008). If Siemens proves Wabtec's antitrust violations, the outcome of each of these factors could be altered.

These various inquiries will involve many of the same facts and witnesses that will be involved in Siemens' antitrust claims, including witnesses who will testify about market share, customer relations, and sales revenue. In fact, Siemens has already identified several witnesses that will likely have information regarding the antitrust case that have already been deposed in the related cases. *See Siemens Mobility, Inc. v. Westinghouse Air Brake Techs. Corp.*, 1:16-cv-00284-LPS (hereinafter "*Siemens v. Wabtec*"), D.I. 152 (Oct. 17, 2017) (Notice to Take Dep. of

Jeffrey D. Kernwein); *Siemens v. Wabtec*, D.I. 153 (Oct. 17, 2017) (Notice to Take Dep. of Jeffrey G. Knott); *Siemens v. Wabtec*, D.I. 169 (Nov. 6, 2017) (Notice to Take Dep. of Robert C. Bourg).

Siemens has also asserted an "unclean hands" defense in response to Wabtec's claim for equitable relief arising from the alleged infringement of its patents. If Siemens proves that Wabtec engaged in anticompetitive behavior in violation of the antitrust laws, this would be clear proof of unclean hands on Wabtec's part. *See W.L. Gore & Assocs. v. Carlisle Corp.*, 529 F.2d 614, 622 (3d Cir. 1976) (holding that anticompetitive use of a patent is a valid defense to patent infringement). Given the factual overlap and interaction of issues between Wabtec's patent case and Siemens' antitrust counterclaims, the Court should deny Wabtec's motion to sever because keeping the cases together—at least for purposes of discovery and up until trial—would promote expedition and judicial economy.

## III.   DENYING SEVERANCE WOULD LEAD TO MORE EFFICIENT DISCOVERY.

The parties would also be able to conduct discovery more efficiently if the antitrust counterclaims remain in this case. As discussed above, there is significant overlap in witnesses between Wabtec's patent infringement claims and Siemens' antitrust claims, and the parties will be able to depose witnesses once rather than multiple times, especially in light of the fact that only depositions relating to Wabtec's failed preliminary injunction motion have been taken so far in this case. Wabtec argues that its antitrust counterclaims "involve different Wabtec executives and employees, different types of documents, and different legal issues than the existing patent infringement claims." (Mot. at 9.) To the contrary, the very evidence of anticompetitive conduct that forms much of the basis of Siemens' antitrust counterclaims came from documents and depositions in the patent and trade secret cases. (*See* D.I. 143 at 53 ¶ 155.) Wabtec even admits in its briefing that "some [of the same] . . . witnesses may be called to support Wabtec's damages case." (Mot. at 9.)

Further, the parties have entered into a cross-use agreement under which documents produced in any of the various related litigations pending between the two parties is deemed produced in all of the litigations. (D.I. 45.) Wabtec has not yet stipulated to the application of the cross-use agreement in a new case if the antitrust counterclaims are severed. If the cross-use agreement does not apply, the parties would waste significant resources sorting through and reproducing the same materials that they have already produced to each other. This would be especially inefficient, since much of the evidence that Siemens has used in bringing the antitrust counterclaims comes directly from discovery in the patent and trade secret litigations. (*See* D.I. 143 at 53 ¶ 155.)

Wabtec's heavy reliance on the Court's grant of Siemens' motion to sever Wabtec's patent counterclaims from Siemens' patent case is a red herring. In Siemens' patent case, Siemens alleges infringement of certain Siemens patents as a result of Wabtec's sales of its ITC-PTC system; the Court severed Wabtec's counterclaims that alleged that Siemens infringed certain Wabtec patents as a result of Siemens' sales of its TrainGuard PTC system. In granting Siemens' motion to sever Wabtec's patent counterclaims, Magistrate Judge Burke explained that "these are patent infringement claims asserting infringement of different patents by different products" that "don't arise out of the same transaction or occurrence." (*Siemens v. Wabtec*, Aug. 17, 2017 Hr'g Tr. at 32:15-19; *see also id.* at 33:17-25 (stating that "defendants' patents have different inventors," "different prosecution histories," "different infringement and noninfringement arguments and evidence," and "largely . . . different" prior art).) *See Senju Pharm. Co. v. Apotex Inc.*, 891 F. Supp. 2d 656, 660 (D. Del. 2012) (stating that different patents "give[] rise to an independent and distinct legal claim or cause of action"). By contrast, as discussed above, Wabtec's misconduct, including the illegal barriers it has erected to Siemens' participation in the ITC-PTC market, are directly relevant both to the validity of Wabtec's patents and the remedies Wabtec seeks for the alleged infringement.

Wabtec also argues that the case should be severed because the counterclaims would require different witnesses and evidence and that keeping the antitrust counterclaims in this case

9

would substantially increase discovery. But Wabtec ignores the fact that, as noted above, there will be material cross-over in witnesses and evidence related to the antitrust counterclaims and the infringement claims, both on the merits (e.g., secondary considerations of non-obviousness) and as to the relief (both injunctive and damages) Wabtec seeks. And Wabtec further ignores the fact that Siemens' evidence that it has used to bring the antitrust counterclaims came directly from discovery in the patent and trade secret cases. (D.I. 143 at 53 ¶ 155.) Even if there were only a moderate degree of overlap in evidence between the parties' respective claims, keeping the cases together will be more efficient than requiring that duplicative discovery be taken and duplicative evidence be presented in two separate cases and/or on separate schedules.

### IV. ANY POTENTIAL JUROR CONFUSION COULD BE ADDRESSED THROUGH OTHER MEANS.

As Wabtec admits, "a single trial will generally lessen the delay, expense and inconvenience to the parties and the courts." (Mot. at 10 (quoting *Karlo v. Pittsburgh Glass Works, LLC*, No. 2:10-CV-1283, 2015 WL 6134052, at *2 (W.D. Pa. Oct. 16, 2015)).) Wabtec argues that severance is nevertheless appropriate because there will be jury confusion if all the claims are tried in a single proceeding. (Mot. at 10-11.) As stated in one of the cases cited by Wabtec, however, "jurors are quite adept at comprehending and adhering to the instructions they are given, even in the most complex factual and legal scenarios." *Synopsys, Inc. v. Magma Design Automation*, No. CIVA 05-701 (GMS), 2006 WL 1452803, at *4 (D. Del. May 25, 2006). But in any event, Wabtec ignores that there are other, potentially less prejudicial ways to reduce jury confusion, like bifurcation of the trial pursuant to Federal Rule of Civil Procedure 42(b). In fact, the case law that Wabtec cites to support its arguments regarding jury confusion largely deals with bifurcation pursuant to Rule 42(b)—not severance pursuant to Rule 21. *See Applied Biosystems, Inc. v. Cruachem, Inc.*, No. CIV.A. 89-579-JRR, 1990 WL 495458, at *2 (D. Del. Aug. 3, 1990) (granting a motion brought under Rule 42(b)); *see also Synopsys*, 2006 WL 1452803, at *4; *see also Eurand Inc. v. Mylan Pharm. Inc.*, No. Civ. 08-889-SLR, 2009 WL 3172197, at *1 n.4 (D. Del. Oct. 1, 2009).

Siemens expresses no opinion at this time as to whether bifurcation of the trial might be appropriate, especially where Wabtec has not moved to bifurcate. By denying Wabtec's motion to sever at this time, the Court could allow this case to continue on its current schedule without the unfair prejudice to Siemens that severance would cause. The parties would have to work hard to complete all necessary discovery, but Siemens is prepared to do so and Wabtec certainly has the resources to do so. After the close of discovery, the parties and the Court would be in a much better position to consider any potential jury-related issues, and to craft appropriate remedies for trial if necessary.

## CONCLUSION

For the foregoing reasons, Siemens respectfully requests that the Court, in its discretion, deny Wabtec's motion to sever.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Karen Jacobs*
Jack B. Blumenfeld (#1014)
Karen Jacobs (#2881)
Stephen J. Kraftschik (#5623)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
kjacobs@mnat.com
skraftschik@mnat.com

OF COUNSEL:

Mark M. Supko
Kathryn L. Clune
Kent A. Gardiner
Vincent J. Galluzzo
Joshua M. Rychlinski
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC  20004
(202) 624-2500

Scott L. Bittman
Jacob Z. Zambrzycki
CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, NY  10022
(212) 223-4000

*Attorneys for Defendant Siemens Mobility, Inc.*

11

John S. Gibson
Chahira Solh
CROWELL & MORING LLP
3 Park Plaza, 20th Floor
Irvine, CA  92614
(949) 263-8400

Sima Namiri-Kalantari
CROWELL & MORING LLP
515 South Flower Street, 40th Floor
Los Angeles, CA  90071
(213) 622-4750

November 1, 2018

## CERTIFICATE OF SERVICE

I hereby certify that on November 1, 2018, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on November 1, 2018, upon the following in the manner indicated:

| | |
|---|---|
| Steven L. Caponi, Esquire<br>K&L GATES LLP<br>600 North King Street, Suite 901<br>Wilmington, DE  19801<br>*Attorneys for Plaintiff* | VIA ELECTRONIC MAIL |
| Thomas E. Birsic, Esquire<br>Christopher M. Verdini, Esquire<br>Jake Morrison, Esquire<br>K&L GATES LLP<br>K&L Gates Center<br>210 Sixth Avenue<br>Pittsburgh, PA  15222<br>*Attorneys for Plaintiff* | VIA ELECTRONIC MAIL |
| Alan L. Barry, Esquire<br>Jason A. Engel, Esquire<br>Benjamin E. Weed, Esquire<br>Devon C. Beane, Esquire<br>Gina A. Jenero, Esquire<br>Katherine L. Hoffee, Esquire<br>K&L GATES LLP<br>70 West Madison Street, Suite 3100<br>Chicago, IL  60602<br>*Attorneys for Plaintiff* | VIA ELECTRONIC MAIL |
| Kathleen Wallace, Esquire<br>Laura Diss Gradel, Esquire<br>JONES DAY<br>100 High Street, 21st Floor<br>Boston, MA  02110<br>*Attorneys for Plaintiff* | VIA ELECTRONIC MAIL |

2

John M. Majoras, Esquire　　　　　　　　　　　　　　　　　　　　*VIA ELECTRONIC MAIL*
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC  20001
*Attorneys for Plaintiff*

　　　　　　　　　　　　　　　　　　　　　　*/s/ Karen Jacobs*
　　　　　　　　　　　　　　　　　　　　　　Karen Jacobs (#2881)

2