IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WESTINGHOUSE AIR BRAKE TECHNOLOGIES CORPORATION (d/b/a WABTEC CORPORATION), | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 17-1687-LPS-CJB |
| SIEMENS MOBILITY, INC., | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM ORDER

Presently pending before the Court in this patent infringement case is Plaintiff Westinghouse Air Brake Technologies Corporation's ("Plaintiff" or "Wabtec") motion seeking severance of certain of Defendant Siemens Mobility, Inc.'s ("Defendant" or "Siemens") counterclaims, pursuant to Federal Rule of Civil Procedure 21. (D.I. 146) Siemens opposes the Motion. For the reasons set forth below, Plaintiff's Motion is GRANTED.

### I. BACKGROUND

#### A. Procedural Background

On April 21, 2016, Siemens filed suit against Wabtec in this Court, alleging that Wabtec infringed a number of Siemens' patents concerning various aspects of positive train control ("PTC") technology. *See Siemens Mobility Inc. v. Westinghouse Air Brake Technologies Corp. d/b/a/ Wabtec Corp.*, Civil Action No. 16-284-LPS (D. Del.) (hereafter, the "16-284 Action"). Thereafter, Wabtec filed counterclaims in the 16-284 Action, including counterclaims asserting that Siemens infringes the three asserted patents that are now at issue in the instant action: United States Patent Nos. 7,398,140 (the "'140 Patent"), 8,175,764 (the "'764 Patent") and 8,478,463 ("'463 Patent") (the "asserted patents"). (D.I. 56, 16-284 Action) Siemens moved to

sever those counterclaims from the 16-284 Action, and the Court granted Siemens' severance motion on August 17, 2017. Instead of re-filing the patent infringement allegations in an affirmative Complaint in this District, however, on September 8, 2017, Wabtec filed such a Complaint in the United States District Court for the Western District of Pennsylvania ("Western District of Pennsylvania"). (D.I. 1 at ¶¶ 1, 21-23) That filing gave rise to the instant action. On September 19, 2017, Wabtec filed a First Amended Complaint, containing similar infringement allegations as to the three asserted patents. (D.I. 14)

Soon after, Siemens moved to transfer venue for the instant action back to this District. (D.I. 19) The Western District of Pennsylvania Court granted that transfer motion on November 20, 2017. (D.I. 34) On November 30, 2017, Chief Judge Leonard P. Stark referred the instant case to the Court to, *inter alia*, resolve any matters related to scheduling, and any motions to dismiss, stay or transfer venue. (D.I. 38) And on December 15, 2017, Siemens filed its Answer to the First Amended Complaint; that Answer included six counterclaims (all related to at least one of the asserted patents) that are not at issue with the instant Motion. (D.I. 42 at 17-29)

About seven months later, on July 19, 2018, Siemens filed a motion seeking leave to amend its counterclaims. This motion (the "motion to amend") sought to add four counterclaims alleging violations of U.S. antitrust law (the "antitrust counterclaims"), one alleging a violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), and one alleging a violation of the Delaware Deceptive Trade Practices Act, 6 Del. C. § 2531 *et seq.* ("DDTPA"), (together, the "Amended Counterclaims"). (D.I. 107 & exs. A-B) Wabtec opposed the motion to amend, but on October 3, 2018, Chief Judge Stark issued an order granting that motion. (D.I. 142) In doing so, Chief Judge Stark found that: (1) the motion to amend was not untimely; (2) Wabtec had not shown that the Amended Counterclaims were futile; and (3) the addition of the Amended Counterclaims

to the instant case would not unfairly prejudice Wabtec as "their addition to this case, which still has ample time left for discovery, is more likely to promote the just, speedy, and relatively inexpensive resolution of the parties' disputes than would the initiation of yet another case between these parties." (*Id.*) Chief Judge Stark ruled that Wabtec "may, if it wishes, file a motion to sever under Rule 21, motion to dismiss [the Amended Counterclaims] under Rule 12, or particularized objections to requested discovery, but discovery on all claims and counterclaims will proceed unless and until any such motion is granted or other relief is ordered." (*Id.*)

Thereafter, on October 18, 2018, Wabtec filed the instant Motion seeking severance of the Amended Counterclaims, (D.I. 146), along with a motion seeking dismissal of the Amended Counterclaims ("the motion to dismiss"), (D.I. 148). Chief Judge Stark later referred the instant Motion to the Court for resolution, (D.I. 160), and briefing on the instant Motion was completed on November 12, 2018, (D.I. 168).[1]

### B.  Factual Background

Wabtec develops, manufactures and sells PTC technology, which is used to construct collision avoidance systems in trains. (D.I. 14 at ¶¶ 24-25) In 2008, Congress enacted the Rail Safety Improvement Act ("RSIA") which required all Class I railroads and passenger rail operators to implement a mandatory PTC collision avoidance system. (*Id.* at ¶ 25) Wabtec owns the asserted patents, which, as was previously noted above, are patents to aspects of PTC technology. (*Id.* at ¶¶ 21-23)

---

[1]  On October 30, 2018, Wabtec additionally filed a motion seeking a protective order and a stay of discovery regarding the Amended Counterclaims, pending resolution of the instant Motion and the motion to dismiss. (D.I. 156) The Court subsequently denied that motion on January 8, 2019. (D.I. 180)

Siemens also develops, manufactures and sells PTC technology, specifically the Trainguard PTC system, which includes the Trainguard PTC Onboard Unit ("OBU"). (*Id.* at ¶¶ 59-60) With its affirmative patent claims here, Wabtec is asserting that Siemens directly, indirectly and willfully infringes the asserted patents by making, using, offering to sell, selling, and/or importing the Trainguard PTC and/or the Trainguard PTC OBU. (*Id.* at ¶¶ 87, 101, 115)

As noted above, the Amended Counterclaims include six different counterclaims. The four antitrust counterclaims all relate to Siemens' allegation that Wabtec has "engaged in an ongoing scheme to exclude Siemens from the [Interoperable Train Control, or "ITC"]-PTC market[,]" and has used "illegal anticompetitive actions such as tying, unfair exclusive dealing, and deception [to] maintain its monopoly over the ITC-PTC, [ITC-PTC Onboard Computer, or "OBC"], and [ITC-PTC Back Officer Server Software, or "BOS"] markets[,]" to the detriment of its "only competitive threat" in those markets, Siemens. (D.I. 143 at 29-30) The four antitrust counterclaims allege, respectively, that Wabtec engages in monopolization in violation of the Sherman Antitrust Act ("Sherman Act"), attempted monopolization in violation of the Sherman Act, tying in violation of the Sherman Act and the Clayton Act, and agreements in restraint of trade in violation of the Sherman Act. (*Id.* at ¶¶ 156-205) The Lanham Act counterclaim alleges that Wabtec has made knowingly false or misleading statements in commercial advertising about the interoperability, safety, technical or other characteristics of Siemens' ITC-PTC components, which materially mislead customers to Siemens' detriment. (*Id.* at ¶¶ 206-15) Lastly, the DDTPA counterclaim is very similar in nature to the Lanham Act counterclaim. (*Id.* at ¶¶ 216-23)

## II. DISCUSSION

### A. Legal Standard

4

Rule 21 provides that the "court may . . . sever any claim against a party." Fed. R. Civ. P. 21. Motions to sever in a patent case are governed by Federal Circuit law. *Vehicle IP, LLC v. AT&T Mobility LLC*, C.A. No. 09–1007–LPS, 2016 WL 6404093, at *1 (D. Del. Oct. 20, 2016) (citing *In re EMC Corp.*, 677 F.3d 1351, 1354 (Fed. Cir. 2012)). The Federal Circuit, in turn, has noted that because Rule 21 does not otherwise provide a standard for district courts to consider when assessing a motion to sever, "courts have looked to [Federal Rule of Civil Procedure] 20 for guidance." *In re EMC Corp.*, 677 F.3d at 1356 (internal quotation marks and citation omitted); *see also In re Nintendo Co., Ltd.*, 544 F. App'x 934, 938 (Fed. Cir. 2013); *Vehicle IP*, 2016 WL 6404093, at *1; *Power Integrations, Inc. v. ON Semiconductor Corp.*, No. 16-CV-06371-BLF, 2018 WL 2688875 at *2 (N.D. Cal. June 5, 2018). Defendants may be joined in one action pursuant to Rule 20 "only if the two independent requirements of Rule 20 are satisfied: (1) the claims against them must be asserted 'with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences,' and (2) there must be a 'question of law or fact common to all defendants.'" *In re EMC Corp.*, 677 F.3d at 1356 (quoting F.R.C.P. 20(a)(2)); *see also Vehicle IP*, 2016 WL 6404093, at *1. These two requirements are necessary, but not sufficient conditions for joinder; the Federal Circuit has noted that even if the claims at issue meet both requirements, joinder may still be refused "in the interest of avoiding prejudice and delay, ensuring judicial economy, or safeguarding principles of fundamental fairness." *In re EMC Corp.*, 677 F.3d at 1360 (internal quotation marks and citation omitted); *see also In re Nintendo Co., Ltd.*, 544 F. App'x at 939; *Power Integrations, Inc.*, 2018 WL 2688875 at *2.[2]

---

[2] In their briefing, the parties addressed most or all of the factors relating to severance/joinder decisions cited in the above paragraph. That said, the parties (citing to non-patent cases) each utilized different tests for resolving motions to sever. Wabtec, for example,

5

Below, the Court will address the two Rule 20-related factors first, and will thereafter consider other factors such as avoidance of prejudice and delay, ensuring judicial economy and safeguarding principles of fundamental fairness.

**B.     Application of Rule 20-related Factors**

**1.     Do the respective claims arise out of the same transaction, occurrence, or series of transactions or occurrences?**

In deciding whether the Amended Counterclaims arise out of the same transaction or occurrence, or series of transaction or occurrences, as do Wabtec's patent infringement claims, the Court analyzes whether there is a "logical relationship between the separate causes of action" such that "there is substantial evidentiary overlap in the facts giving rise to the" different sets of claims or the claims "share an aggregate of operative facts." *In re EMC Corp.*, 677 F.3d at 1358; *see also Vehicle IP, LLC*, 2016 WL 6404093, at *1. "Rule 20 makes clear that the existence of a single common question of law or fact alone is insufficient to satisfy the transaction-or-occurrence requirement." *In re EMC Corp.*, 677 F.3d at 1357.

Here, it is not difficult for the Court to conclude that Siemens' Amended Counterclaims do not share "a logical relationship" or "an aggregate of operative facts" with Wabtec's patent infringement claims. (Indeed, in its briefing, Siemens never really argues that they do.). This is

---

asserted that the Court should utilize a five-factor test (which appears to include most or all of the factors referenced in the paragraph above): "(1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims." (D.I. 147 at 4-5 (citing *Karlo v. Pittsburgh Glass Works, LCC*, No. 2:10-cv-1283, 2015 WL 6134052, at *2 (W.D. Pa. Oct. 16, 2015)). Siemens, for its part, did not directly address the two Rule 20-related factors at all, instead focusing on the following three-factor analysis: "(1) the convenience of the parties; (2) avoiding prejudice; and (3) expedience and economy." (D.I. 158 at 3 (citing *Graudins v. Retro Fitness, LLC*, 921 F. Supp. 2d 456, 467-68 (E.D. Pa. 2013)).

6

not surprising, as, for the most part, the resolution of patent infringement claims and antitrust-related claims require different types of analysis. The question of whether Siemens' Trainguard PTC system infringes Wabtec's patents will focus on technical issues relating to the comparison of system components or methods of use to the content of the asserted patent claims. As to these claims, it is Siemens' conduct that will be at issue. Conversely, Siemens' antitrust claims are broad in scope and will be primarily focused on Wabtec's alleged monopolistic activity that is said to have occurred in three different product markets. There, it will be Wabtec's conduct that is being called out. Thus, it can be said that "[b]ecause the [a]ntitrust [l]itigation arises from [Wabtec's] conduct, and the [patent] [l]itigation arises from [Siemens'] conduct, the two [sets of claims] could not arise from the same transaction or occurrence." *Syngenta Seeds, Inc. v. Monsanto Co.*, No. Civ. 04–908–SLR, 2005 WL 678855 at *2 (D. Del. Mar. 24, 2005) (holding that patent infringement and antitrust claims do not arise from the same transaction or occurrence where the claims arise from the separate conduct of different actors); *see also Sanofi-Synthealbo v. Apotex Inc.*, No. 02 Civ. 2255(SHS), 2006 WL 3103321, at *4 (S.D.N.Y. Nov. 2, 2006) (granting a motion to sever defendant's antitrust counterclaims from plaintiffs' action asserting patent infringement in part because "[t]he Antitrust Allegations arise out of recent commercial activity that is distinct from the underlying patent dispute."). For this reason alone, Rule 20's requirements would not be satisfied.

2. **Is there a question of law or fact common to the disparate claims?**

With regard to whether the two sets of claims share any common issues of law and fact, it is likely that there will be at least some fact questions relevant to Wabtec's patent case that will also be relevant to Siemens' Amended Counterclaims. For example, the commercial success of Wabtec's products that read on the asserted patents may be relevant to both cases. (D.I. 158 at 7)

Similarly, Wabtec's asserted market dominance and the scope of its market power will be relevant to patent damages and to antitrust issues. (*Id.*); *cf. Dentsply Intern. Inc. v. New Tech. Co.*, Civ.A. No. 96-272 MMS, 1996 WL 756766, at *4 (D. Del. Dec. 19, 1996). And Siemens' Trainguard PTC system's sales will be relevant to damages in the patent case and to issues of competition in the antitrust matter. (D.I. 158 at 7)

But in the main, the key questions of law and fact at issue will be very different. As was noted above, Wabtec's patent litigation will focus on patent law issues, such as construction of the patent claims and whether the asserted patents are valid and whether those patents are infringed by Siemens' Trainguard PTC product. *Cf. Syngenta Seeds*, 2005 WL 678855 at *2. Siemens' antitrust case, in contrast, will focus on "typical antitrust issues such as whether [Wabtec is a] monopolist[,] whether [Wabtec] engaged in anticompetitive conduct[,]" and what are the relevant product markets and/or consumers. *Syngenta Seeds*, 2005 WL 678855 at *2; *see also Eurand Inc. v. Mylan Pharms. Inc.*, Civ. No. 08–889-SLR, 2009 WL 3172197 at *2 (D. Del. Oct. 1, 2009) (noting the "distinct lack of evidentiary overlap between issues of patent validity and infringement and issues of . . . antitrust"); *Sanofi-Synthealbo*, 2006 WL 3103321, at *4 ("[T]he Antitrust Allegations principally concern questions of antitrust law and contract law, not patent law."). The documentary proof, fact witness testimony and expert witness testimony needed to litigate both sets of claims will therefore vary significantly.

Thus, although there would likely be *some* common questions of law or fact, the significant difference in legal and factual issues still suggests that severance is appropriate. *See Sanofi-Synthealbo*, 2006 WL 3103321, at *4; *Syngenta Seeds*, 2005 WL 678855 at *2; *see also Federal Trade Commission v. Endo Pharmaceuticals, Inc.*, Civ. No. 16-1440, 2016 WL 6124376, at *4 (E.D. Pa. Oct. 20, 2016) (noting that with regard to Rule 20's "common question

of law or fact" requirement, only one such common question need be shared to satisfy the Rule, but that "[c]ourts in [the Third] Circuit have found that the same series of transactions or occurrences prerequisite under Rule 20 essentially consumes the second requirement that there arise a question of law or fact common to all joined parties.") (internal quotation marks and citation omitted).

### C. Other Relevant Factors

Because both Rule 20 factors are not satisfied, the Court could end its analysis, with the result that the Motion would be granted. But for sake of completeness, the Court will also analyze the other factors mentioned in Federal Circuit caselaw that sometimes come into play when a district court analyzes a Rule 21 motion. As will be seen below, review of those factors does not suggest that grant of the Motion is inappropriate.

With regard to whether severance (or the lack thereof) would engender prejudice to one side or the other, or whether it would contravene the principle of fundamental fairness, both sides make understandable arguments. On the one hand, Wabtec rightly asserts that the complexity and cost inherent in antitrust litigation could serve to unnecessarily delay the resolution of its earlier-filed patent claims, were the Amended Counterclaims not severed. (D.I. 147 at 14) On the other hand, Siemens understandably worries that were the Amended Counterclaims severed, the mechanics of getting a new case up and running could lead to some further delay in resolving its antitrust case (a case that will already be complicated enough). (D.I. 158 at 6-7) In the end, those arguments each have some force, but they about cancel each other out.

As to the issue of judicial economy, the Court recognizes that in Chief Judge Stark's earlier order on the motion to amend, he noted his expectation that adding the Amended Counterclaims to this case "which still has ample time left for discovery, is more likely to

promote the just, speedy, and relatively inexpensive resolution of the parties' disputes than would the initiation of yet another case between these parties." (D.I. 142)[3] But in the interval, Siemens Amended Counterclaims have not moved forward much, as the parties have been tied up in further litigation over how and whether such discovery should proceed. (*See* D.I. 180) And because antitrust litigation surely "holds the potential for enormously costly and time-consuming discovery[,]" *Superior Offshore Int'l, Inc. v. Bristow Grp., Inc.*, CIVIL ACTION No. 1:09-CV-00438-LDD, 2010 WL 11470613, at *6 (D. Del. Dec. 1, 2010), were the Amended Counterclaims not severed at this stage, it would almost certainly mean that the current case schedule "will be entirely displaced[,]" (D.I. 147 at 15). It does seem, then, that disentangling Wabtec's earlier-filed patent infringement allegations from Siemens' Amended Counterclaims will at least help Wabtec's patent case get to resolution on a much speedier timetable. *Cf. Masimo Corp. v. Philips Elecs. N. Am. Corp.*, No. CIV.A 09-80-JJF-MPT, 2010 WL 925864, at *2 (D. Del. Mar. 11, 2010) ("[T]here is a strong likelihood that consideration of the patent validity issues will be delayed significantly if tried together with the antitrust issues. Major antitrust litigation is often enormously time-consuming.") (internal quotation marks and citation omitted). And getting resolution on at least a subset of the current action, sooner rather than

---

[3] The Court assumes that were the Amended Counterclaims not severed, they would ultimately be bifurcated for trial from Wabtec's patent claims. *Cf. Orthophoenix, LLC v. Dfine, Inc.*, No. CV 13-1003-LPS, 2015 WL 1938702, at *1 (D. Del. Apr. 28, 2015) (bifurcating an antitrust counterclaim from an affirmative patent infringement case relating to 15 patents-in-suit); *see Ciena Corp. v. Corvis Corp.*, 210 F.R.D. 519, 521 (D. Del. 2002) (holding that "bifurcation is an important discretionary tool that district courts can use in patent cases to ensure that the cases are resolved in a just manner by juries that understand the complex issues before them."). Thus, the Court need not consider Wabtec's argument that to add the Amended Counterclaims to this "already complex patent infringement case . . . will . . . make the trial unmanageable for the Court and the jury." (D.I. 147 at 11)

later, might well aid overall judicial economy.[4] This factor at least slightly favors grant of the Motion. *See Eurand Inc.*, 2009 WL 3172197 at *1 (granting severance of patent infringement and antitrust claims where "this request is supported by the promotion of judicial economy and avoiding the injection of complex, unrelated and perhaps unnecessary issues into the patent infringement case.").

### III. CONCLUSION

Ultimately, Wabtec has shown that the Rule 20 factors do not both militate in favor of keeping the claims at issue in one litigation, as the two sets of claims really are related to distinct transactions and occurrences. In light of that, and because judicial economy may be somewhat better served via severance, the Court GRANTS Plaintiff's Motion. Although Siemens will now have to file its counterclaims in a separate case, the Court expects that the parties will work together to avoid inefficiency and to move both cases forward at a good pace.[5]

Dated: January 29, 2019

 _____
 Christopher J. Burke
 UNITED STATES MAGISTRATE JUDGE

---

[4] With all of the above said, the Court makes no final decision here on whether the instant action and any newly-filed action that includes Siemens' currently-filed Amended Counterclaims should be consolidated for pre-trial purposes pursuant to Federal Rule of Civil Procedure 42.

[5] Regarding Siemens' concern about having to "repeat the entire motion to dismiss briefing stage" if severance is granted, (D.I. 158 at 5), that is not going to happen. When the new case is filed, and assuming there is no material change to the substance of Siemens' allegations, a responsive pleading will be filed on an abbreviated timeline and the entire motion to dismiss briefing package will simply be re-filed at once in the new case. (D.I. 168 at 7) Additionally, the Court expects that the parties' cross-use discovery agreement will apply to the new case. (*Id.*)